## Mary Ann Bishop v. George Bishop.

*Divorce: Extreme cruelty.* Where a husband, in a moment of passion, and on provocation, told his wife if she could not behave herself she had better go, but there was no reason to believe he intended or expected her to leave, and she went away without any further cause, he is not guilty of extreme cruelty, and she has no ground for a divorce.

Where, after such departure, the conduct of the parties showed that each was manœuvring to get up a ground of divorce against the other so as to

obtain some legal advantage, no weight should be allowed to such grievances as the parties have thus sought to provoke.

*Adultery not to be lightly inferred.*   Where adultery is sought to be made out by proof of freedom of manners, unchastity should not be inferred from want of refinement, if the conduct of the party accused is not such as to offend the general sentiment among the class of people with whom she habitually associates.   The law can not, without cruelty and injustice, require a higher standard of behavior than virtuous people in the same position accept for themselves and their fellows.

*Adultery:   Proof to be closely scanned, even though direct.*   Proof of adultery, however direct, is to be scanned very closely when the circumstances are improbable, and rejected if intrinsically incredible—as the testimony in the present case was held to be, even independent of the character of the only direct witness, who not only averred himself to be *particeps criminis*, but showed himself otherwise to be of infamous character.

*Alimony:   Costs.*   An allowance was made to the wife for expenses, notwithstanding the dismissal of the bill, the proceedings appearing to have been *bona fide* on her part.   And costs of this court were for the same reason denied to defendant.

*Heard July 10th.   Decided July 13th.*

Appeal in Chancery from Kalamazoo Circuit.

The bill in this case was filed by the complainant to obtain a limited divorce from her husband on the ground of cruelty and neglect to support his family.   The bill also prayed for the custody of the children and a sufficient provision for maintenance.

The cause was heard on pleadings and proofs and a decree granted as prayed for.

The facts are stated in the opinion.

*J. W. Breese,* and *D. D. Hughes,* for complainant.

1.   Although the relief sought by the complainant is to be determined entirely by the statutes above referred to, yet, the general prayer for relief in complainant's bill, is in the disjunctive, and the court may, under such general prayer, grant any other specific relief consistent with the case, made by the bill.— *2 Paige's Ch. 396, and cases there cited; 1 Daniells Ch. Pr. and Pl. 455.*

2.   The husband, being of sufficient ability, is bound to support his wife in his family.— *2 Kent, Com. 130, 131.* And, under our statute, the wife is not obliged to seek

some person who is willing to trust her, and take the chances of collection at the end of a law suit.—*Bishop on Marriage and Divorce, 537, 538,* ignoring the doctrine held in *6 N. H. 87.*

But it is not claimed in defendant's answer that the complainant has any remedy at law.

3. The *gravamen* of this action is the defendant's ordering his wife to leave his house, and locking the doors against her; threatening her life if she attempted to enter; and being of sufficient ability to provide a suitable maintenance for her, grossly, wantonly and cruelly refused and neglected so to do.

This clause is intended for a new cause for divorce, and is entirely independent of that of utter desertion for the term of two years.

We insist that this case does not present the sole questions of extreme cruelty, but a refusal to support under the statute, is the real point of inquiry.

We concede that, in an action for extreme cruelty only, the weight of authority is that the proof must show "reasonable apprehension of bodily hurt."— *Tyler on Infancy and Coverture, 886.*

4. The adultery of the complainant; her habit of drinking; want of modesty and lewd behavior, attempted to be proven by the defendant, is no defense to this action, even if true.

*First.* Because adultery is not set up in the answer as a bar to this suit.

*Second.* Adultery of the wife is probably a proper subject for a cross bill, an independent matter, and no answer to the bill of complaint, and so of the other matters complained of by the defendant in his answer.—*4 Paige Ch. 432.*

But we deny that adultery on the part of the complainant has been proved.

BISHOP v. BISHOP.

*Balch, Smiley & Balch,* for defendant.

1. Cruelty must consist in acts of violence to the person, or other acts equivalent thereto, such as prey upon and injure the physical health of the person against whom they are exhibited; anything short of such physical injury, falls far short of open and gross cruelty. The cruelty, in fine, must be such as to endanger the life and health of the complainant, and renders cohabitation unsafe.— *2 Paige Ch. 501; 3 Robertson, N. Y. S. C. 669; 4 Barb. 217; 11 Paige, 166.*

2. In this case, in seems complainant first left her husband's house voluntarily, and in such a case she would not be entitled even to alimony, much less a divorce.— *Anonymous, 4 Desau, 64.*

She did not leave by reason of any cruelty, or threatened cruelty. "Occasional sallies of passion do not amount to legal cruelty, so long as there is no bodily harm or threat of bodily harm."— *1 Edwards, 278.*

There may have been unhappiness in this family, but no cruelty on the part of the defendant; and courts of justice can not furnish remedies for all the ills of life.— *7 Hag. Con. R. 77; 11 Paige, 46.*

3. In this case there is no allegation of, or pretence that any threats were made, nor the least fear of personal injury apprehended by complainant; one or both of which must exist to constitute legal cruelty. *Sir William Scott* says in *Evans v. Evans,* the causes for such apprehension must be grave and weighty, and such as show an absolute impossibility that the duties of the married life can be discharged.— *7 Hag. Con. R. 57.*

Mere austerity of temper, petulance of manner, occasional sallies of passion, if they do not threaten bodily harm, can not amount to legal cruelty.— *4 Eng. Ecc. 310; 7 Id. 144; 3 N. Y. S. C. 669; 1 Bishop on Mar. and Div. §§ 717, 718, 719 and 740; 4 Johns. Ch. 187; 9 Dana, 52; 10 La. 249.*

BISHOP *v.* BISHOP.

4. A complainant in a case like this should come into court upon the fundamental principles of equity, free from blame on her part. The evidence clearly shows the reverse. *1 Bishop on Mar. and Div.* § *734; 8 N. H. 307; 11 Paige, 46; 2 Barb. 309.*

The defendant therefore claims that there has been no act of violence on his part towards complainant, no injury to her person, and no allegation or proof of any reasonable apprehension of any bodily harm.— *1 Hag. 34; 4 Eng. Ecc. R. 810, 311; 17 Conn. 189; 3 Mass. 321; 2 Paige. 501; 3 Id. 267; 2 Phillimore, 132.*

Nothing was done in this case which could subject him to a criminal prosecution, nothing which could injure the person of complainant.— *1 Edwards. 218; 1 Eng. Ecc. R. 232; 4 Mass. 588; 2 Paige, 502.*

5. The prayer of the bill in this case is for a divorce *a mensa et thoro,* or a limited divorce; such a prayer should always be answered with great caution.— *4 Johns. Ch. 187, 500; 1 Bishop on Mar. and Div.* §§ *740, 743; 12 Md. 294; 1 Wright, Pa. 225; 1 Grant, Pa. 389.*

The amount of alimony reported and allowed in this cause is beyond all reason. It being just about one third of his entire property, leaving him to support and educate his children, and her to do nothing.— *3 Paige, 270, 272; 6 New Amer. Enc. 224, 225; 1 Bishop on Mar. and Div. 703, 704; Reeves Dom. Relations, 207, and note; 1 Johns. Ch. 604; 2 Atkins, 96.*

CAMPBELL J.

Complainant filed her bill for a divorce on the grounds of cruel treatment and neglect to provide means of support. There is no evidence in any way tending to show such neglect, and the only ground upon which any serious controversy could arise is that of cruelty.

This question lies within a narrow compass. Up to October, 1864, the parties are shown not to have lived on

terms of enmity, and to have got along without any more
difficulties than might be expected from two persons of no
refinement and of quick tempers and ungoverned tongues.
Neither appeared to be dissatisfied with the other, but they
had occasional differences of no serious or lasting kind.

In October, 1864, complainant claims in her bill that
defendant ordered her to leave the house, and she left and
continued away until December 1st. She says the anger
of her husband was caused by some remark made by her
concerning one Phœbe Holmes, a girl staying in the house,
but she fails to state what the remark was. Defendant says
she charged him and Phœbe with improper intercourse, and
it is altogether probable that this is the true account. If so,
defendant had good cause for exasperation, and could not
be blamed for harsh language in reply. It does not appear
in proof that he meant to turn her out of the house. He
only admits saying that if she could not behave herself she
had better go, and she went without any compulsion. It
does not appear that she had any cause for her jealousy
beyond her own suspicions, and we can not perceive in this
departure any result of extreme cruelty, or anything more
than foolish and excessive passion.

Complainant then, according to her own story, remained
away at a relative's, having taken her effects with her, but
having left her children at home, and continued to absent
herself until December 1st. Having been advised, by some
one whom she had consulted, to go and insist upon her
rights, she returned home without her baggage, and her
husband informed her that her room was better than her
company, and refused to allow her to sleep in his room.
The next morning he told her he intended to lock up his
house and take the children to his mother's. They had
some discussion concerning terms of settlement, but no con-
clusion was reached, and she left. A day or two afterwards
she came back with her trunk, in company with some rel-
atives, and it was announced to him that she desired to

come back, but he would not allow the house to be unlocked. Negotiations were again opened for a settlement, and she made an offer to settle for three thousand dollars, which he declined, but proposals were made and entertained for referring it to third parties. Nothing was accomplished, but in a few days this bill was filed. Defendant subsequently went for complainant to get her to return, but she refused. He had also made her offers through an agent.

In all of these transactions there is nothing tending to show personal violence or any species of cruelty. The worst construction which can be put on defendant's conduct is that he desired to desert complainant; while it is equally manifest that she was trying to get a cause of divorce against him, and in their several proceedings each was endeavoring to get some legal advantage. It is not necessary to enlarge upon the testimony, as the impression made upon our minds is very clear that complainant has shown no cause of divorce.

But it would possibly lead to some misconception if we were to reverse the decree and dismiss the bill without some remark upon the recriminatory charges made in the answer, and the mass of disparaging testimony returned in the cause. The answer charges complainant, in addition to faults in temper and conversation, with being too immodest in her behavior to be consistent with entire chastity. We deny relief only because complainant's own case is weak. So far as her personal conduct is concerned, while it was such as would not be found among people of any refinement, it does not appear to have caused any serious remark among her associates; and had it been that of a vicious woman it is not likely she would have been tolerated as she undoubtedly was. There is no uniform rule of behavior for all times and places, and, among a great many people, a very considerable freedom of manners may exist, without justifying suspicions of unchastity. It would be cruel and unjust in these suits to require a standard of behavior

higher than is accepted by virtuous people for themselves
and their associates.

Much of the evidence is so plainly exaggerated that it
shows all the marks of having been affected by personal
prejudice. And the testimony of actual criminality is so
improbable in its circumstances, and comes from such
doubtful sources, that it has not produced in our minds
any conviction of its truth. The witness Maybee, who is
the chief authority for the most disgusting stories, appears
to be a very precocious young villain, and no confidence
could be placed in his statements, even if they were not
intrinsically incredible.

We reject entirely from our consideration all the charges
brought against complainant, but we do not think she has
made out any cause for a divorce. Her bill must therefore
be dismissed and the decree below must be reversed. But
an order must be entered allowing her temporary alimony
up to this time, so far as it has not been paid, at the rate
fixed by the Circuit Court, and a further allowance for ex-
penses of two hundred dollars. And no costs will be
awarded to defendant, as there is no reason to doubt the
good faith of the proceedings.

The other Justices concurred.